**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **EXXONMOBIL OIL CORP.,** | 1:09-cv-01498-OWW-DLB |
| Plaintiff, | **MEMORANDUM DECISION ON DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT (Doc. 24)** |
| v. | |
| **NICOLETTI OIL, INC., et al.** | |
| Defendants. | |

## I. INTRODUCTION

Plaintiff Exxonmobil Oil Corp. ("Plainitff") is proceeding with an action pursuant to the Resource Conservation and Recovery Act (42 U.S.C. § 6972(a)(1)(B)) against Defendants Nicoletti Oil, Inc., Dino J. Nicoletti, and John A. Nicoletti. In addition to asserting federal claims against Defendants, Plaintiff asserts several state law causes of action.

Plaintiff filed an original complaint against Defendants on August 24, 2009. (Doc. 1). Defendants filed a motion to dismiss the original complaint on October 7, 2009. (Doc. 13). Plaintiff filed a first amended complaint ("FAC") on December 31, 2009. (Doc. 20).

On February 4, 2010 Defendants filed a motion to dismiss ("motion to dismiss") the FAC. (Doc. 24). Plaintiff filed

opposition ("opposition") to the motion to dismiss the FAC on April 26, 2010.  (Doc. 27).  Defendants filed a reply ("reply") to Plaintiff's opposition on May 3, 2010.  (Doc 28).

## II. **FACTUAL BACKGROUND**.

Plaintiff is a New York corporation in the business of producing, distributing, and selling petroleum products. (FAC at 3).  Plaintiff's predecessor, General Petroleum Corporation, purchased 2801 Blossom Street in Dos Palos, California in January 1946.  (FAC at 4).

From 1946 to 1950, Dino J. Nicoletti operated a fuel distribution plant at 2801 Blossom street as a distributor for General Petroleum Corportation.  (FAC at 5).  From 1950 to 1980, Dino Nicoletti operated 2801 Blossom Street as a cosignee of General Petroleum Corporation and then Mobil Oil Corporation. (FAC at 5).  Mobil Oil Corporation was also Plainitff's predecessor. (FAC at 5).  On or about August 25, 1980, Dino Nicoletti and his wife Floretta Nicoletti purchased 2801 Blossom Street from Mobil Oil Corporation.  (FAC at 5).  On or about December 5, 1996, ownership of 2801 Blossom Street was transferred to Dino Nicoletti and Floretta Nicoletti as Trustees under the Dino J. Nicoletti and Florretta A. Nicoletti Revocable Living Trust.  (FAC at 5).

Defendants have operated and continue to operate a gasoline and diesel sales and distribution facility at 2801 Blossom Street. (FAC at 5). Nicoletti Oil, Inc. ("Nicoletti Oil") was incorporated in California on or about January 1, 1982.  (FAC at 6). Dino Nicoletti served as an officer of Nicoletti Oil throughout the 1980's and currently serves as the company's Vice President. (FAC at 6).  John A. Nicoletti currently serves as the President of

Nicoletti Oil, a position he has held since as early at 1990. FAC at 6. Cindy Nicoletti serves as the Secretary-Treasurer of Nicoletti Oil. (FAC at 6). The FAC alleges that 100% of the capital stock of Nicoletti Oil is owed by John A. Nicoletti and Cindy Nicoletti. (FAC at 6).

In or about 1998, Defendants purchased a lot adjacent to 2801 Blossom Street and installed new diesel dispensers on the parcel. (FAC at 6). Together, 2801 Blossom Street and the adjacent lot purchased by Defendants in 1998 form the property at issue in this action ("Property"). (FAC at 5). The Property is located directly across the street from a residential area. (FAC at 6).

Following the sale of 2801 Blossom Street in 1980, Plaintiff or its predecessors entered into a series of wholesale distributor contracts ("Contracts") with Dino Nicoletti, pursuant to which Dino Nicoletti agreed to purchase a certain quantity of gasoline, diesel fuel, and lubricant products. (FAC at 7). Such contracts include, but are not limited to, a Wholesale Distributor Agreement for Motor Fuels, dated May 6, 1985 ("1985 Agreement") and a Wholesale Distributor Agreement (Lubricants, Distillates and other Non-Motor Fuels) dated March 1, 1989 ("1989 Agreement"). (FAC at 7). According to the FAC, the parties to the Contracts intended the Contracts to bind Plaintiff (or its predecessors) and Nicoletti Oil. (FAC at 7).

Plaintiff alleges that during Dino Nicoletti's and Nicoletti Oil's ownership of the Property and operation of its businesses, releases of petroleum and petroleum substances, including methyl tertiary butyl ether ("MTBE"), have occurred on and migrated off of the Property. (FAC at 7). The FAC states that Nicoletti Oil

**3**

detected a release of petroleum hydrocarbons at the property in 1988, prompting the Merced County Department of Public Health to issue a Notice and Order to Nicoletti Oil and Mobil Oil Corporation that required investigation of soil and groundwater contamination at the Property. (FAC at 8).

On or about August 24, 1992, Mobil Oil Corporation and Nicoletti Oil entered into a Cost Sharing Agreement wherein the parties agreed that Nicoletti Oil would contract directly with the contractors performing the investigative work required by the Merced County Department of Public Health. (FAC at 8-9). The Cost Sharing Agreement provided that, unless terminated beforehand, it remained in effect until Nicoletti Oil's contractor submitted the Site Contamination Workplan ("SCW"), Preliminary Investigation and Evaluation Report ("PIER") and, if needed, a Problem Assessment Report ("PAR") in final form to the Merced County Department of Public Health. (FAC at 9). The Cost Sharing Agreement provided that Mobil Oil Corporation and Nicoletti Oil would each pay 50% of the costs for the preparation of the SCW, the PIER, and, if needed, the PAR. (FAC at 9). The Merced County Department of Public health required submission of a PAR in 1993, however, Nicoletti Oil's contractors failed to complete or submit a PAR. (FAC at 9).

In 2001, Plainitff learned of Nicoletti Oil's failure to comply with outstanding directives from the Merced County Department of health and began conducting investigation at the Property as requested by overseeing agencies. (FAC at 9). Plaintiff's investigation included onsite and offsite borings, soil and groundwater analysis, installing monitoring wells, and monitoring analytical data, among other tasks. (FAC at 9).

On or about February 3, 2005, the Regional Board issued Cleanup and Abatement Order No. R5-2005-0701, naming both Nicoletti Oil and Plaintiff jointly as the "Discharger," without attempting to allocate their relative liability for the contamination or assigning responsibility for cleanup at or around the Property ("2005 CAO"). (FAC at 9-10). The 2005 CAO required the development and implementation of an interim remedial action plan, further site assessment of soil vapor migration, and submission of a full corrective action plan, including a human health risk assessment. (FAC at 10). Plaintiff complied with the 2005 CAO in December 2005. (FAC at 10). At the direction of the Regional Board, Plaintiff issued precautionary notices to the residents near the Property warning against on-site excavation or the digging of holes greater than a few feet deep on their properties and against the consumption and distribution of produce grown in the neighborhood. (FAC at 10). Plaintiff also distributed air filtration units, free of charge, to those residents who chose to use them as a precaution against vapor intrusions from the subsurface plume. (FAC at 10).

The Regional Board issued a new CAO in July 2006. (FAC at 10-11). Plaintiff continues to operate and maintain the remedial system at the Property pursuant to the terms of the 2006 CAO. (FAC at 11). Nicoletti Oil continues to operate its business and benefit from the remediation operated and maintained by Plaintiff, but does not contribute to or participate in the remedial effort. (FAC at 11). Plaintiff alleges that Nicoletti Oil's ongoing operation of the plant at the Property has resulted in further unauthorized releases of contaminants, which undermine and threaten

**5**

N/A

to prolong Plaintiff's remedial efforts under the 2006 CAO. (FAC at 11). Since 2006, Plaintiff has requested integrity testing of Nicoletti's fuel system, but Nicoletti refuses to perform such testing or to allow Plaintiff to perform testing.[1] (FAC at 12).

In March 2008, Plaintiff's consultants detected a new release of diesel fuel at the Property when the on-site remedial system was overwhelmed by a substantial volume of fresh red-dye diesel product; Plaintiff alleges that this new release could have been prevented had Defendants conducted adequate testing to assure the integrity of its fuels system. (FAC at 12). Plaintiff further alleges that Nicoletti's own personnel and physical leak detection systems failed to detect the release. (FAC at 12).

At Plaintiff's insistence, the Regional Board requested that Plaintiff propose a scope of work for more comprehensive testing of the entire fuel system, and Plaintiff submitted such a scope, which it proposed to be completed (at Plaintiff's expense) by a third party contractor acceptable to Nicoletti and the Regional Board. (FAC at 13). The Regional Board approved Plaintiff's scope of work. (FAC at 13). Nicoletti declined to allow the further testing of the fuel system proposed by Plainitff and approved by the Regional Board. (FAC at 13). Instead, Nicoletti Oil subsequently submitted its own less complete fuels system testing

---

[1] It is unclear whether certain allegations in the FAC pertain to individual Defendants or Nicoletti Oil, or both, as the FAC references the actions of "Nicoletti" in some places and "Nicoletti Oil, Inc." in others. (*See* FAC at 13, ¶ 53) (referencing "Nicoletti" in one sentence and "Nicoletti Oil, Inc." in the next sentence with respect to a single allegation). The court employs plaintiff's designations in summarizing the FAC's factual allegations. The FAC does state that it refers to all Defendants "collectively as 'Nicoletti' or 'Defendants,'" however, this pleading tactic creates unnecessary ambiguity and ultimately requires the court to dismiss the FAC, as discussed below.

scope of work, dated April 24, 2009, which it proposed to conduct using its own contractors, and which the Regional Board subsequently approved. (FAC at 13).

Nicoletti's contractors and/or subcontractors commenced fuel system tightness testing, per Nicoletti Oil's scope of work, on June 1, 2009. (FAC at 13). However, Nicoletti could not proceed with portions of the system testing because some or all of the components on both the gasoline and diesel systems were in such a state as to be incapable of retaining liquid, and therefore could not be tested for tightness. (FAC at 13). Nicoletti subsequently completed fuel system upgrades and/or replacements and performed fuel system testing. (FAC at 14).

Plaintiff alleges that the releases of petroleum product from Defendant's operation are contrary to applicable regulations and industry standards of operation for petroleum facilities, and that there is a continuing risk of new releases of petroleum product from Nicoletti's operations. (FAC at 14). Plaintiff contends that Nicoletti's releases from the Property may present an imminent and substantial endangerment to health or the environment, and that the majority, if not all, of the contamination being remediated at or near the Property is of a fuel type and in a location that cannot be attributed to any ownership or conduct of Plaintiff. (FAC at 15).

### III. **LEGAL STANDARD**

Dismissal under Rule 12(b)(6) is appropriate where the complaint lacks sufficient facts to support a cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir.1990). To sufficiently state a claim to relief and

**7**

survive a 12(b)(6) motion, the pleading "does not need detailed factual allegations" but the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). Mere "labels and conclusions" or a "formulaic recitation of the elements of a cause of action will not do." *Id*. Rather, there must be "enough facts to state a claim to relief that is plausible on its face." *Id*. at 570. In other words, the "complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, --- U.S. ----, ----, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (internal quotation marks omitted).

The Ninth Circuit has summarized the governing standard, in light of *Twombly* and *Iqbal*, as follows: "In sum, for a complaint to survive a motion to dismiss, the nonconclusory factual content, and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir.2009) (internal quotation marks omitted). Apart from factual insufficiency, a complaint is also subject to dismissal under Rule 12(b)(6) where it lacks a cognizable legal theory, *Balistreri*, 901 F.2d at 699, or where the allegations on their face "show that relief is barred" for some legal reason, *Jones v. Bock*, 549 U.S. 199, 215, 127 S.Ct. 910, 166 L.Ed.2d 798 (2007).

In deciding whether to grant a motion to dismiss, the court must accept as true all "well-pleaded factual allegations" in the pleading under attack. *Iqbal*, 129 S.Ct. at 1950. A court is not,

**8**

however, "required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir.2001). "When ruling on a Rule 12(b)(6) motion to dismiss, if a district court considers evidence outside the pleadings, it must normally convert the 12(b)(6) motion into a Rule 56 motion for summary judgment, and it must give the nonmoving party an opportunity to respond." *United States v. Ritchie*, 342 F.3d 903, 907 (9th Cir.2003). "A court may, however, consider certain materials-documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice-without converting the motion to dismiss into a motion for summary judgment." *Id*. at 908.

## IV.  DISCUSSION

### A. Plaintiff's Claim for Express Contractual Indemnity

#### 1.  Existence of a Specific Contract

Defendants contend that Plaintiff has failed to properly plead the existence of one or more specific contracts.  (Motion to Dismiss at 2).  Specifically, Defendants complain that the FAC is ambiguous with respect to the parties who are purportedly bound by the Contracts.  (Motion to Dismiss at 2-3).  The relevant allegations contained in the FAC provide:

> 25. ExxonMobil is informed and believes, and on that basis alleges that following the sale of 2801 Blossom Street in 1980, ExxonMobil (or its predecessors in interest) entered into a series of wholesale distributor contracts with Dino J. Nicoletti(collectively, the "Contracts"), whereby Dino J. Nicoletti agree to purchase a certain quantity of gasoline, diesel fuel, and/or lubricant products from ExxonMobil (or its predecessors in interest). Such contracts include, but are not limited to, a Wholesale Distributor Agreement for Motor Fuels, dated May 6, 1985 ("1985 Agreement") and a Wholesale

9

1  Distributor Agreement (Lubricants, Distillates and other
2  Non-Motor Fuels) dated March 1, 1989 ("1989 Agreement").

3      26. ExxonMobil is informed and believes, and on that
4  basis alleges that the parties to the Contracts intended
   that the Contracts bind ExxonMobil (or its predecessors
5  in interest) and Nicoletti Oil, Inc., as evidenced by
   Dino J. Nicoletti's signed acknowledgement of receipt of
6  the 1985 Agreement in his capacity as "D. J. Nicoletti
   dba Nicoletti Oil, Inc." and Dino J. Nicoletti's use of
7  Nicoletti Oil, Inc. letterhead in correspondence related
   to the 1985 Agreement, and as evidenced by several
8  addenda to the 1989 Agreement signed by John A. Nicoletti
   in his capacity as President of Nicoletti Oil, Inc.

9 (FAC at 7).

10     The FAC is ambiguous. The FAC states that Plaintiff "entered
11 into a series of wholesale distributor contracts with Dino J.
12 Nicoletti," which suggests that Plaintiff contracted with Dino
13 Nicoletti as an individual. (FAC at 7). However, in the next
14 paragraph, the FAC alleges that the parties intended for Nicoletti
15 Oil to be bound by the contract. (FAC at 7). The ambiguity created
16 by paragraphs 25 and 26 renders the FAC deficient, as the FAC does
17 not give Defendants fair notice of who Plaintiff alleges is liable
18 under the Contracts.

19     Plaintiff's reply clarifies that Plaintiff does in fact seek
20 to hold Dino Nicoletti personally liable under the Contracts.
21 (Reply at 6). However, Plaintiff's reply cannot salvage the FAC,
22 as the court must decide Defendants' motion to dismiss based solely
23 on the allegations pled in the FAC. *See, e.g.*, *United States v. LSL*
24 *Biotechnologies*, 379 F.3d 672, 699 (9th Cir. 2004) ("The nature of
25 Rule 12(b)(6) does not allow courts to reach 'matters outside the
26 pleading'"); Fed. R. Civ. P. 12(b)(6).
27 ///
28 ///

**10**

Plaintiff cites *Sterling v. Taylor*, 40 Cal.4th 757, 773 (Cal. Ct. App. 2007) and *Luce v. Sutton*, 115 Cal. App. 2d 428, 433 (Cal. Ct. App. 1958) for the proposition that the allegations contained in the FAC are sufficient to allege that both Nicoletti Oil and Dino Nicoletti the individual are bound by the Contracts. (Reply at 6-7). Neither *Sterling* nor *Luce* stands for the proposition that, where all parties involved intend for the principal to be bound by a contract, the principal's signing agent is also personally liable under the contract by virtue of the agent's signature. To the contrary, the general rule in California is that "if at the time the contract is made the identity of the principal is disclosed to the third party, the latter is presumed to have contracted with the principal unless at the time of making the contract it chooses to hold the agent solely liable." *Midwest TV v. Scott, Lancaster, Mills & Atha*, 205 Cal. App. 3d 442, 577 n. 4 (Cal. Ct. App. 1998); *see also* CAL. CIV. CODE § 2343 (setting forth exclusive criteria for holding agent personally liable). The FAC fails to allege facts sufficient to support the notion that Dino Nicoletti is personally liable under the Contracts.[2] Plaintiff's claim for express contractual indemnity is ambiguous and must be dismissed, with leave to amend.

///
///

---

[2] In light of Plaintiff's allegation that the parties intended for Nicoletti Oil to be bound by the Contracts, a conclusory allegation that the parties also intended Dino Nicoletti to be personally liable would be insufficient to satisfy Plaintiff's pleading burden. *See* CAL. CIV. CODE § 2343; *Iqbal*, 129 S.Ct. at 1949. Where a court instructs a party regarding a specific pleading deficiency, the party's failure to remedy the deficiency may warrant dismissal of a claim with prejudice. *See Ferdik v. Bonzelet*, 963 F.2d 1258, 1261 (9th Cir. 1992).

**11**

### 2. **Statute of Limitations**

The motion to dismiss contends that Plaintiff's contractual indemnity claim is barred by the statute of limitations. (Motion to Dismiss at 4). Defendants contend that Plaintiff was put on notice of its contractual claims by 2001 or, at the latest, by February 3, 2005. (Motion to Dismiss at 4). Plaintiff responds that, under California law, where an indemnity provision covers both liability and loss, an express contractual indemnity claim does not accrue until the indemnitee has actually paid the loss. (Opposition at 8) (citing *Globe Indem. Co. v. Larkin*, 62 Cal. App. 2d 891, 894 (1944)). Defendants do not contest Plaintiff's position.

California Civil Code section 2778(2) provides: "Upon an indemnity against claims, or demands, or damages, or costs, expressly, or in other equivalent terms, the person indemnified is not entitled to recover without payment thereof." Because section 2778 provides that an indemnitee may not recover from on indemnitor without first making payment on a claim, the statute of limitations for an action against the indemnitor does not begin to run until such payment is actually made. *E.g. Lincoln v. Narom Development Co.*, 10 Cal. App.3d 619, 627 (Cal. Ct. App. 1970) ("Due to the nature of the indemnity...There would be no right until [the indemnitee was] forced...to spend funds...Therefore, no statute of limitations has run"). Defendant's motion to dismiss Plaintiff's contractual indemnity claims on the basis of the statute of limitations is DENIED.

///
///

**B. Plaintiff's Negligence Claim**

To plead a cause of action for common law negligence, a plaintiff must allege: (1) the defendant owed the plaintiff a duty of due care; (2) the defendant breached that duty; (3) the plaintiff suffered injury; and (4) the breach proximately caused the injury. *See, e.g., Resolution Trust Corp. v. Rossmoor Corp.*, 34 Cal. App. 4th 93, 101 (Cal. Ct. App. 1995).

Defendants contend that the FAC fails to state a claim for negligence because (1) "California law does not recognize a 'special relationship' between co-dischargers named in regional board cleanup and abatement orders which would create an extraordinary duty of care"; and (2) Plaintiff "fails to allege a single act or omission by [Defendants] which breached [any] duty." (Motion to Dismiss at 5-6).

**1. Defendant's Duty of Care**

Generally, there is no duty to prevent economic loss to third parties in negligence actions at common law. *Greystone Homes, Inc. v. Midtec, Inc.*, 168 Cal. App. 4th 1194, 1216 (Cal. Ct. App. 2008) (citing *Ratcliff Architects v. Vanir Construction Management, Inc.*, 88 Cal. App. 4th 595, 605 (Cal. Ct. App. 2001)). However, a special relationship between two parties may impose on each a duty to exercise ordinary care in the avoidance of economic injury to the other. *See, e.g., Ott v. Alfa-Laval Agri, Inc.*, 31 Cal. App. 4th 1439, 1448-49 (Cal. Ct. App. 1995). In order to survive a motion to dismiss, a claim for negligence based on a special relationship, a claimant must allege facts sufficient to support the existence of a special relationship. *Id*.

///

**13**

Plaintiff contends that "by virtue of the special relationship of the parties as co-ordered Dischargers under the 2005 CAO and the 2006 CAO, [Defendants owe] a duty to ExxonMobil not to impair, undermine, or sabotage the remediation activities." FAC at 29.[3] Existence of a special relationship depends on "(1) the extent to which the transaction was intended to affect the plaintiff, (2) the foreseeability of harm to the plaintiff, (3) the degree of certainty that the plaintiff suffered injury, (4) the closeness of the connection between the defendant's conduct and the injury suffered, (5) the moral blame attached to the defendant's conduct and (6) the policy of preventing future harm." *E.g. J'Aire Corp. v. Gregory,* 24 Cal. 3d 799, 804 (Cal. 1979).

The FAC fails to allege the intent element necessary to establish a special relationship under California law. In order to establish that Defendants' actions were "intended to affect" Plaintiff within the meaning of the first *J'Aire* factor, Plaintiff must allege facts which demonstrate that Defendants' had actual knowledge that their conduct would directly affect Plaintiff.[4] *See Ales-Peratis Foods Internat. v. Am. Can Co.*, 164 Cal. App. 3d 277,

---

[3] The 2005 and 2006 CAOs did impose a duty to clean up the Property that is recognized by California law. *See Roosmoor Corp.*, 34 Cal. App. 4th at 105 (holding that remedial order created duty to clean up soil contamination and suggesting possibility of negligence action based thereon). However, it does not appear, and Plaintiff does not allege, that Plaintiff was a member of the class of persons or entities that the remedial order sought to protect. Plaintiff's allegations are thus insufficient to establish that the COAs, standing alone, imposed a duty on Defendants to avoid economic injury to Plaintiff. *See, e.g., id. (*citing *Haft v. Lone Palm Hotel,* 3 Cal. 3d 756, 763 (1970) for the proposition statute or regulation creates duty only as those it was intended to protect).

[4] Plaintiff need not allege intent to injure. *See Ales-Peratis*, 164 Cal. App. 3d at 289.

**14**

289 (Cal. Ct. App. 1985) ("The performance of the contract directly affected appellant's ability to fully and timely perform its contract with its customer, and AP alleged both Gencan and American knew this...Thus American Can's performance was intended to, and did directly affect Ales-Peratis"); *see also Chameleon Engineering Corp. v. Air Dynamics Inc.*, 101 Cal. App. 3d 418, 420 (Cal. Ct. App. 1980) (allegation that defendant "knew that the failure to properly perform the terms of its purchase order ...would foreseeably affect and impact [plaintiff's] ability to perform the terms of [plaintiff's other] contract[s]" held sufficient to satisfy *J'Aire* test). Plaintiff's negligence claim must be dismissed, with leave to amend. *See Lincoln Gen. Ins. Co. v. Access Claims Adm'rs, Inc.*, 2007 U.S. Dist. LEXIS 67172* 24 n.10 (E.D. Cal. 2007) (granting motion to dismiss as to special relationship negligence claim where allegations did not demonstrate intent element); *accord Zamora v. Shell Oil Co.*, 55 Cal. App. 4th 204 , 212-14 (1997) (absence of intent element fatal to special relationship claim); *Fieldstone Co. v. Briggs Plumbing Products, Inc.*, 54 Cal. App. 4th 357, 369 (1997) (same).

**2. The FAC's Allegations of Breach of Duty**

The FAC alleges that Defendant's failed to "adequately and reasonably inspect, maintain, and operate its plant so as to prevent, detect, and clean up" unauthorized releases of contaminants. FAC at 30. The FAC alleges the following specific facts in support of Plaintiff's negligence claim:

> 45. ExxonMobil is informed and believes, and on that basis alleges that ExxonMobil consultants, who visit the Property on a regular basis in order to maintain the remedial system, have repeatedly observed and documented surface releases of petroleum product in the area of

    Nicoletti Oil, Inc.'s fuel dispensers, have encountered concentrations of the gasoline oxygenate MTBE in monitoring wells, and have experienced increased product recovery rates in the remedial system, all indicating that new releases have occurred. FAC at 12

    46. Because of these observations and because of ExxonMobil's concerns over the integrity of Nicoletti's systems, ExxonMobil has, since 2006, repeatedly requested integrity testing of Nicoletti's fuel systems in order to protect against recurring or continuing releases, but Nicoletti refused to perform such integrity testing or allow ExxonMobil to do so. FAC at 12.

    47. In March 2008, ExxonMobil's consultants detected a new release of diesel at the Property when the on-site remedial system was overwhelmed by a substantial volume of fresh red-dye diesel product. FAC at 12.

    48. ExxonMobil is informed and believes, and on that basis alleges that this new release could have been prevented had Nicoletti conducted adequate testing to assure the integrity of its fuels system. FAC at 12.

    49. ExxonMobil is informed and believes, and on that basis alleges that it was ExxonMobil who first reported the release to the Regional Board. FAC at 12.

    50. ExxonMobil is informed and believes, and on that basis alleges that Nicoletti's own personnel and physical leak detection systems failed to detect the release. FAC at 12.

    55. ExxonMobil is informed and believes, and on that basis alleges that Nicoletti could not proceed with portions of the system testing because some or all of the components on both the gasoline and diesel systems were in such a state as to be incapable of retaining liquid, and therefore could not be tested for tightness, and that Nicoletti had no option other than to actually replace and upgrade its systems in order to complete its fuels system testing scope of work. FAC at 13.

The FAC states numerous facts which support Plaintiff's allegation that Defendants breached the applicable duty of care on at least one occasion. Defendants' contention that the FAC fails to properly plead a breach of duty lacks merit.

///

///

**16**

## V. CONCLUSION

For the reasons stated, IT IS ORDERED:

1) Defendants' motion to dismiss Plaintiff's contractual indemnity claim is GRANTED, without prejudice;
2) Defendants' motion to dismiss Plaintiff's negligence claim is GRANTED, without prejudice; and
3) Plaintiff shall lodge a formal order consistent with this decision within five (5) days following electronic service of this decision by the clerk. Plaintiff shall file an amended complaint within fifteen (15) days of the filing of the order. Defendant shall file a response within fifteen (15) days of receipt of the amended complaint.

IT IS SO ORDERED.

**Dated: May 17, 2010**           /s/ Oliver W. Wanger
                                  UNITED STATES DISTRICT JUDGE